**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

X.AI LLC,

        Plaintiff,

   v.                                  **Case No.**

RUSSELL EDWARD BLOODWORTH,

        Defendant.

## COMPLAINT

Plaintiff X.AI LLC ("xAI" or "Plaintiff"), by and through undersigned counsel, brings this action against Defendant Russell Edward Bloodworth ("Defendant"), alleging as follows:

## NATURE OF THIS ACTION



1. Plaintiff brings this action to enforce its contractual rights and hold Defendant accountable for his repeated, deliberate, and unconscionable violations of the xAI Terms of Service and Acceptable Use Policy through his abhorrent abuse of Plaintiff's generative AI chatbot known as "Grok."

2. Grok is a powerful, neutral generative artificial intelligence tool designed by xAI to be maximally truth-seeking and help humanity understand the universe. Like any generative AI

tool, every response, every image, every generation is the result of the user's prompts and directions. Grok is a neutral tool, subject to user control.

3. There are bad people in the world and not all users have good intentions, so Plaintiff draws a bright line on permissible usage: the tool may be open and truth-seeking but is not a safe harbor for illegal, harmful, or abusive conduct. Plaintiff takes violations of this principle extremely seriously. It enforces its rules against violators through account suspensions, account terminations, and by reporting suspected child sexual abuse material to the National Center for Missing and Exploited Children ("NCMEC"). Indeed, Plaintiff has suspended 77,723 accounts and made 100,235 reports to NCMEC in 2026, resulting in (at least) 299 arrests.

4. In addition and when necessary, Plaintiff will pursue civil accountability against bad actors who abuse its tool to harm others.

5. Plaintiff strictly prohibits any use of Grok in connection with illegal, harmful, or abusive activities. These prohibitions are set forth in plain language in the xAI Terms of Service and the xAI Acceptable Use Policy. Among the expressly forbidden activities are:

- "Using [Grok] in a way that infringes, misappropriates or violates a person's privacy or their right to publicity";
- "Undressing or nudifying real persons, or otherwise altering a real person's image or likeness to depict them in an intimate or sexual context";
- "Depicting likenesses of persons in a pornographic manner"; and
- "Sexualizing or exploiting children."

xAI vigorously enforces these rules.

6. In addition to its Terms of Service and Acceptable Use Policy, Plaintiff builds in technological safeguards to prevent bad actors from engaging in illegal, harmful, or abusive conduct, or otherwise attempting to violate its rules.

7. Defendant flagrantly violated Plaintiff's rules and went to great lengths to circumvent Plaintiff's technological safeguards. Despite expressly agreeing to abide by the xAI Terms of Service and Acceptable Use Policy, Defendant designed misleading prompts to circumvent Grok's built-in safeguards and then abused the tool to convert non-sexual photographs into sexually explicit images without the photograph subject's knowledge or consent.

8. Upon information and belief, Defendant generated, possessed, and/or distributed child sexual abuse material ("CSAM"). His conduct was knowing, intentional, and calculated. Arkansas law enforcement arrested him in connection with the creation and possession of CSAM.

9. Immediately upon discovering that Defendant was engaging with reprehensible, illegal images in violation of xAI's Terms of Service, xAI submitted a Cyber Tip to NCMEC. Plaintiff's discovery and reporting of Defendant's misconduct led directly to his arrest, according to public reporting. Plaintiff is providing its full support to the ongoing prosecution.

10. Defendant's actions were a calculated scheme to weaponize Plaintiff's tool for criminal ends, exposing real victims to profound and lasting harm, while exposing Plaintiff to significant legal risk and reputational damage.

11. This lawsuit seeks: (i) a judicial declaration that Defendant violated Plaintiff's Terms of Service and Acceptable Use Policy, (ii) enforcement of the indemnification provision contained therein, (iii) injunctive relief preventing Defendant from creating additional accounts or further circumventing Plaintiff's safeguards, and (iv) all damages to which Plaintiff is entitled, including attorneys' fees and costs.

## **PARTIES**

12. Plaintiff X.AI LLC is a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business in Austin, Texas. The sole member

3

of X.AI LLC is X.AI Corp., which is incorporated in the state of Nevada, with its principal place of business in Austin, Texas.

13. Defendant Russell Edward Bloodworth is a natural person believed to reside in or near Bentonville, Arkansas. Upon information and belief, he is the owner of Bloodworth Photography and is the creator and sole user of at least four xAI accounts, associated with the identification numbers "4f43490a-12da-4ee8-81ce-b869ceb289dd", "9ae4e9b3-4811-4d99-988e-6f81b128e1a4", "5380266c-16cb-4262-bc3f-b80e2abbcc0f", and "2af477bf-78ff-4725-810f-662f4766c80d".

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity exists, and the amount in controversy exceeds $75,000. Plaintiff is organized under the laws of Nevada with its principal place of business in Texas.

15. This Court has personal jurisdiction over Defendant with respect to Plaintiff's claims because Defendant, through his use of multiple accounts on xAI, expressly consented to xAI's Terms of Service – Consumer, effective date November 4, 2025 (the "xAI Terms of Service"). The xAI Terms of Service mandate that "all disputes related to these Terms, the Service, or any patents . . . shall be brought and must proceed exclusively in the federal U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum."

16. Venue is proper pursuant to the mandatory forum-selection clause in the xAI Terms of Service to which Defendant agreed and pursuant to 28 U.S.C. § 1391(b)(3).

**FACTS**

17.    xAI owns and operates the set of generative AI models offered under the Grok brand. Grok is a free AI assistant designed with the goal of maximizing truth and objectivity. It will provide information to users upon request and has advanced capabilities in reasoning, coding, and visual processing. Grok offers real-time search, image generation, trend analysis, and more.

18.    Users may access Grok directly through Grok.com or its standalone app, through the X platform with which it is integrated, and via other third-party platforms. More than 2.6 million xAI user accounts have been registered from Texas with approximately 850,000 unique active users in June 2026.

19.    Consistent with its broader goal of being maximally truth-seeking, Grok also offers "Spicy" and "Unhinged" modes. Spicy mode permits provocative outputs. Unhinged mode leans into chaotic, irreverent, and deliberately unfiltered responses. Neither mode relates to image generation or alteration; they are text-based, conversational modes of interaction only.

20.    Moreover, these text-based modes remain firmly bound by xAI's rules: they do not permit users to violate the xAI Terms of Service and Acceptable Use Policy, including by creating sexually exploitative materials in any format or any form of CSAM. Consumers who use Grok's image tools have no ability to access diminished safeguards against abuse.

**A. The xAI Terms of Service**

21.    To use and interact with Grok, users must acknowledge and agree to a set of binding Terms of Service that "apply to [users'] use of Grok," and are at all times publicly available on Grok.com and x.ai to new and existing users. For example, at all relevant times, the xAI Terms of Service have been prominently linked on Grok.com via a bold, white hyperlink against a black backdrop below where users enter their queries, informing users that "[b]y messaging Grok, you

agree to our Terms and Privacy Policy," both of which contain hyperlinks to xAI's then-existing Terms of Service and Privacy Policy.

22. Users may, but are not required to, create xAI accounts on Grok.com. Users who create xAI accounts are notified of the xAI Terms of Service prior to clicking "Sign Up." On the sign-up page, users are shown a prominent banner informing them that "[b]y continuing, you agree to xAI's Terms of Service and Privacy Policy," which contain hyperlinks to xAI's then-existing Terms of Service and Privacy Policy.

23. In describing the allowed uses of Grok, the xAI Terms of Service state: "Subject to your compliance with these Terms, you may access and use our Service. You must comply with all applicable laws as well as our Acceptable Use Policy and other documentation, guidelines, or policies we make available to you, including on our website."

24. The xAI Terms of Service further describe prohibited uses of Grok by stating: "What you cannot do. Prohibited uses of our Service include any illegal, harmful, or abusive activities, including but not limited to: . . . causing harm or engaging in abusive activity, including by: . . . violating a person's privacy or their right to publicity, [or] the sexualization or exploitation of children," among others. The xAI Terms of Service further describe that users "are responsible for User Content[1], including ensuring that it does not violate any applicable law or these Terms."

25. The xAI Terms of Service further provide that "[a]nyone who violates these Terms, Acceptable Use Policy, other documentation, guidelines, or policies we make available to you" is prohibited from using Grok.

---

[1] In defining the term "User Content," the xAI Terms of Service state: "You Own Your User Content. You may provide input (e.g., text, audio, images, video, code, files, folders, drives, etc.) to the Service ('Input') and receive output from the Service (excluding output from Grokipedia) based on the Input ('Output'). Collectively, Input and Output are 'User Content.'"

26.    The xAI Terms of Service further provide that xAI "may terminate or suspend your access to our Service or delete your account at any time without notice to you if we determine, at our sole discretion, that:

- You breached these Terms or our Acceptable Use Policy, guidelines, or other policies;
- We must do so to comply with the law;
- Your use of our Service could cause risk or harm to xAI, our users, or anyone else[.]"

27.    xAI's Acceptable Use Policy, which "applies to anyone using our Service" includes similar restrictions, stating that:

You are free to use our Service as you see fit so long as you use it to be a good human, act safely and responsibly, comply with the law, do not harm people, and respect our guardrails:

1. Comply with the law. For example, don't use our Service or Outputs to promote or engage in illegal activities, including:
    1.1. Violating copyright, trademark, or other intellectual property law
    1.2. Violating a person's privacy or their right to publicity
    1.3. Depicting likenesses of persons in a pornographic manner
    1.4. The sexualization or exploitation of children
    1.5. Operating in a regulated industry or region without complying with those regulations
    1.6. Defrauding, defaming, scamming, or spamming
    1.7. Espionage, spying, stalking, hacking, doxing, or phishing
2. Do not harm people or property. This prohibition includes things like using our Service or Outputs to:
    2.1. Critically harm or promoting critically harming human life (yours or anyone else's)
    2.2. Take unauthorized actions on behalf of others
    2.3. Develop bioweapons, chemical weapons, or weapons of mass destruction
    2.4. Destroy property
3. Respect guardrails and don't mislead. Don't circumvent safeguards unless you are part of an official Red Team or otherwise have our official blessing. Don't mislead people as to the nature and source of Outputs, including images. You should be transparent and disclose your use of AI assistance and potential limitations, as applicable.

We report suspected child sexual abuse material to the National Center for Missing and Exploited Children.

28.     The xAI Terms of Service also include an indemnification provision, prominently titled "Indemnity," which states, in full:

> To the fullest extent permitted by law, you will defend, indemnify, and hold xAI and our parents, subsidiaries and affiliates, and our and their respective agents, suppliers, licensors, employees, contractors, officers, and directors (collectively the "xAI Indemnitees") harmless from and against any and all claims, damages (whether direct, indirect, incidental, consequential, or otherwise), obligations, losses, liabilities, costs, debts, and expenses (including, but not limited to, legal fees) arising from or related to your use of the Service and Output, your Input, or any violation of these Terms.

**B. Defendant Bloodworth's xAI Accounts**

29.     Defendant created four xAI accounts with the identification numbers "4f43490a-12da-4ee8-81ce-b869ceb289dd", "9ae4e9b3-4811-4d99-988e-6f81b128e1a4", "5380266c-16cb-4262-bc3f-b80e2abbcc0f", and "2af477bf-78ff-4725-810f-662f4766c80d"   on March 4, 2026; March 19, 2026; March 19, 2026; and March 19, 2026, respectively. By creating each account, Defendant necessarily agreed to the xAI Terms of Service.

**C. Defendant Bloodworth's Egregious—and Unlawful—Violations of the xAI Terms of Service**

30.     A review of Defendant's xAI accounts shows that on numerous occasions between at least as early as March 30, 2026 and at least as late as April 30, 2026 (the "Relevant Period"),[2]

---

[2] By using Grok during the Relevant Period, Defendant also necessarily agreed to xAI's Terms of Service – Consumer, effective date April 10, 2026. Those Terms similarly contain a mandatory forum selection clause and indemnification provision. The forum selection clause states that all actions "shall be brought and must proceed exclusively in the federal U.S. District Court for the Northern District of Texas or state courts located in Wichita County or Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum." *See* Terms of Service – Consumer, effective date April 10, 2026, available at https://x.ai/legal/terms-of-service/previous-2026-04-10. The indemnification provision therein states: "To the fullest extent permitted by law, you will defend, indemnify, and hold xAI . . . harmless from and against any and all claims, damages (whether direct, indirect, incidental, consequential, or otherwise), obligations, losses, liabilities, costs, debts, and expenses (including, but not limited to, legal fees) arising from or related to your use of the Service and Output, your Input, or any violation of these Terms." *Id.*

Defendant uploaded non-sexual images of individuals, and Defendant then used, or attempted to use, Grok to alter and/or generate new images and/or videos depicting those individuals in a sexualized manner. Upon information and belief, Defendant did so without those individuals' consent.

31.     A review of Defendant's xAI accounts further shows that on numerous occasions during the Relevant Period, Defendant submitted prompts to Grok to alter such images to sexualize the subjects of the images, to which Grok initially responded by refusing to follow the prompts on the basis that such material violated Grok's content moderation guardrails. In response, Defendant repeatedly submitted adversarial prompts, with alterations, in an effort to circumvent Grok's moderation efforts.

32.     In clear violation of the xAI Terms of Service, the xAI Acceptable Use Policy, and U.S. law, some of the obscene images produced by Defendant involved the likenesses of minor children.

33.     Defendant continued to use Grok during the Relevant Period after violating the xAI Terms of Service, until Plaintiff suspended his accounts. The xAI Terms of Service to which he agreed prohibited his use after his prior violations.

34.     During the Relevant Period, Plaintiff reported Defendant's illegal activity to NCMEC's CyberTipline. For example, after discovering an incident of Defendant's illegal activity on April 22, 2026, Plaintiff submitted a Cyber Tip to NCMEC on April 23, 2026. On June 8, 2026, this Cyber Tip was passed along to the Bentonville Police Department, which then conducted an investigation and ascertained the identity of the suspect as the Defendant.

35.     On June 10, 2026, the Bentonville Police Department arrested Defendant and charged him with 100 felony counts of Distributing, Possessing or Viewing of Matter Depicting

Sexually Explicit Conduct Involving a Child. The criminal charges against Bloodworth were filed in Bentonville, Arkansas (the "Bloodworth Criminal Action").

36.     As the Affidavit of Probable Cause in the Bloodworth Criminal Action explained, Defendant's arrest was a direct result of Plaintiff's report of Defendant to law enforcement. Plaintiff is providing its full support to the ongoing prosecution.

37.     Upon information and belief, at least some of the images at issue in the Bloodworth Criminal Action were generated or altered through Defendant's violative use of Grok.

**D.  Defendant Bloodworth's Violations of the xAI Terms of Service Result in Litigation Against Plaintiff**

38.     On July 23, 2026, Plaintiff was sued anonymously by a minor—Jane Doe—and her parents—John and Jane Roe—in the United States District Court for the Eastern District of Arkansas in a case captioned, *Jane Doe By and Through Her Legal Guardian Parents, John Roe and Jane Roe v. X.AI Corp., X.AI LLC, and X Corp.*, Case No. 4:26-cv-00750-LPR (the "Doe Litigation").

39.     Upon information and belief, the allegations contained in the Doe Litigation relate to Defendant's alleged violative misuse of Grok to alter professionally taken photographs of Jane Doe.

40.     The allegations therein are that in spring 2026, John and Jane Roe hired Defendant to take professional photographs of their minor daughter, Jane Doe. The allegations further assert that on June 10, 2026, local police informed the Roes that Defendant used Grok to alter their daughter's photographs into CSAM.

41.     Plaintiffs in the Doe Litigation assert more than a dozen claims against xAI and seek an undetermined amount of compensatory, statutory, and punitive damages as well as restitution, disgorgement, and injunctive relief.

42.    As a result of Defendant's violative use of Grok, Plaintiff will be forced to incur substantial legal fees defending itself against and face the risk of liability for damages in the Doe Litigation.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

43.    Plaintiff incorporates by reference each and every allegation set forth above.

44.    Defendant agreed to the xAI Terms of Service and Acceptable Use Policy when he created and used his xAI accounts.

45.    The xAI Terms of Service and Acceptable Use Policy are a valid, enforceable contract.

46.    Plaintiff performed its obligations under the xAI Terms of Service and Acceptable Use Policy.

47.    Defendant breached the xAI Terms of Service and Acceptable Use Policy by leveraging Grok to generate non-consensual sexually explicit images and CSAM.

48.    Among Defendant's various other breaches described herein:

a)   Defendant manipulated Grok to create sexually explicit images of Jane Doe and others without their consent, in contravention of the xAI Terms of Service, which prohibit, among other conduct, using Grok to aid in violating a person's privacy or their right to publicity.

b)   Defendant manipulated Grok to create CSAM, in contravention of the xAI Terms of Service, which prohibit, among other conduct, the sexualization or exploitation of children.

49.    Plaintiff has been damaged by Defendant's breaches of the xAI Terms of Service.

50. The xAI Terms of Service contain a clear and conspicuous indemnification provision that states: "To the fullest extent permitted by law, you will defend, indemnify, and hold xAI and our parents, subsidiaries and affiliates, and our and their respective agents, suppliers, licensors, employees, contractors, officers, and directors (collectively the 'xAI Indemnitees') harmless from and against any and all claims, damages (whether direct, indirect, incidental, consequential, or otherwise), obligations, losses, liabilities, costs, debts, and expenses (including, but not limited to, legal fees) arising from or related to your use of the Service and Output, your Input, or any violation of these Terms."

51. Defendant's conduct directly triggered this indemnity obligation. As detailed above, Defendant knowingly and intentionally used Grok to circumvent safeguards, alter non-consensual images, and generate and/or distribute CSAM.

52. Because Defendant's misuse caused real harm to third parties, exposed xAI to third-party claims, and has caused and continues to cause xAI reputational harm and other damages, xAI is entitled to indemnification.

53. As a result of these breaches, Plaintiff seeks indemnification, attorneys' fees and court costs, declaratory relief, and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant and grant the following relief:

A. Enter judgment in favor of Plaintiff against Defendant;

B. Declare that Defendant has breached the xAI Terms of Service;

C. Order that Defendant indemnify Plaintiff for all reasonable expenses incurred defending itself in the Doe Litigation and any other legal action filed by a victim of

Defendant's violative misconduct;

D.    Award Plaintiff its damages incurred as a result of Defendant's violative misconduct, including any real harm to third parties, exposure to actual and potential third-party claims and lawsuits, and any reputational harm and other damages, including, to the extent they exist, those already incurred;

E.    Enter a permanent injunction enjoining Defendant from attempting to create any xAI accounts, or from otherwise using Grok;

F.    Enter judgment awarding Plaintiff its attorney's fees and costs; and

G.    Order such other relief that the Court deems just and reasonable.


DATED:  July 30, 2026

                                    Respectfully submitted,

                                    /s/ Chad Fillmore
                                    Chad Fillmore
                                    TXBN 00785861
                                    BROWN PRUITT WAMBSGANSS DEAN
                                    FORMAN & MOORE, P.C.
                                    201 Main Street, Suite 700
                                    Fort Worth, Texas 76102
                                    Tel: (817) 338-4888
                                    Fax: (817) 338-0700
                                    cfillmore@brownpruitt.com

                                    *Attorney for Plaintiff*